James E. Brown, Esq. #004822
**JAMES E. BROWN, P.C.**
2111 E. Highland Avenue
Suite 145
Phoenix, Arizona 85016-4732
(602) 230-1504
jim@aztaxlaw.com

Attorney for Debtors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| JOSEPH P. PALMISANO AND AMY K. PALMISANO, | Case No. 2:09-bk-29570-GBN |
| Debtors. | DEBTORS' PLAN OF REORGANIZATION |

Debtors, JOSEPH P. PALMISANO AND AMY K. PALMISANO, as Debtors-in-Possession ("Debtors"), in the above bankruptcy case, hereby submit to the Bankruptcy Court and the creditors of this Chapter 11 estate (the "Estate") the following Chapter 11 Plan of Reorganization ("Plan") pursuant to 11 U.S.C. §1121(a).

## ARTICLE 1

### INTRODUCTION

Debtors filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on November 17, 2009. The Plan provides for treatment of the secured and unsecured debt of the Debtors. The Plan also provides for the retention of the Debtors' Assets in consideration of the Debtors' submitting portions of

their future income to funds the Chapter 11 Plan for a period of three years from the Effective Date of Plan Confirmation. All creditors are encouraged to consult the Disclosure Statement which was prepared by the Debtors before voting to accept or reject the Plan.

NO SOLICITAITON MATERIAL OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED HEREWITH HAVE BEEN APPROVED OR AUTHORIZED BY THE BANKRUPTCY COURT AND THE BANKRUPTYCY CODE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

## ARTICLE 2

### DEFINITIONS

Terms used in this Plan have the same meaning as they do in the United States Bankruptcy Code or the Federal Rules of Bankruptcy Procedure or as specifically defined in the Plan and/or the Disclosure Statement (the "Disclosure Statement"). These terms are a substantial and operative part of the Plan.

2.2. Administrative Claim: A Claim for payment of an administrative expense of a kind specified in 11 U.S.C. § 503(b) or § 1114(e)(2) and entitled to priority pursuant to 11 U.S.C. § 507(a)(1), including, without limitation (a) the actual, necessary costs and expenses of preserving the Estates or administering the Chapter 11 Case; (b) any actual and necessary post-petition expenses of the operating Debtors; (c) all professional fee Claims to the extent approved by the Bankruptcy Court pursuant to interim and final allowances in accordance with the Bankruptcy Code § § 105, 330, 331, or 503; (d) all fees and charges assessed against

2

the Estates under 28 U.S.C. § 1930; (e) payments for retiree benefits required to be made before a plan is confirmed under 11 U.S.C. § 11 14(e)(2); and (I) all allowed Claims that are entitled to be treated as Administrative Claims pursuant to the Final Order of the Bankruptcy Court under 11 U.S.C. § 46(c)(2)(A). 2.3. Administrative Claims Bar Date: The deadline by which Administrative Claimants must file applications for approval and payment of Administrative Claims, which date shall be 30 days from the Effective Date.

2.5. Allowed Claim: Any claim or portion thereof (a) that has been allowed by a final order; or (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and non-contingent amount of which is listed in the Bankruptcy Schedules filed in connection with this Bankruptcy Case, other than a claim that is scheduled at zero, is in an unknown amount, or is disputed; or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any final order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a final order of the Court; or (d) that is expressly allowed in a liquidated amount in the Plan. Unless otherwise specified in this Plan, an Allowed Claim shall not, for purposes of computation ordistribution under the Plan, include

interest, fees or penalties on the amount of such Allowed
Claim from and after the Petition Date.

2.6. Assets: Each and every item of property of the Estates
as of the Effective Date, whether tangible or intangible, legal or
equitable, liquidated or unliquidated.

2.7. Avoidance Actions: Causes of action which are available
to the Debtors' bankruptcy Estates pursuant to § 544, 547, 548,
549 and/or 550 of the Bankruptcy Code.

2.8. Bankruptcy Cases: The bankruptcy proceedings commenced
by the Debtors filing of their voluntary petitions for relief
under chapter 11 of the Bankruptcy Code on November 17, 2009 at
Case No. 2:09-bk-29570-GBN.

2.9. Bankruptcy Code: Title 11 of the United States Code, as
occasionally amended and applicable to the Chapter 11 Bankruptcy
Case. ("Code" or "Bankruptcy Code")

2.10. Bankruptcy Court or Court: The United States Bankruptcy
Court for the District of Arizona, or such other court that
exercises jurisdiction over the Bankruptcy Cases.

2.11. Bankruptcy Rules: The Federal Rules of Bankruptcy
Procedure promulgated under 28 U.S.C. § 2075, and the Local Rules
of Bankruptcy Procedures for the District of Arizona, as
applicable during the term of the Bankruptcy Cases.

2.13. Claim: A claim against the Debtors or their property as
defined in 11 U.S.C. §101(5), including: (a) a right to payment,
whether or not such right is reduced to judgment, liquidated,
unliquidated, fixed, contingent, matured, unmatured, disputed,
undisputed, legal, equitable, secured or unsecured, which right

arose or accrued prior to the date of confirmation; or (b) a right to an equitable remedy for breach of performance, if such breach gives rise to aright of payment whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed or undisputed, secured or unsecured, wheresuch right arose or accrued prior to confirmation; or (c) a claim arising under 11 U.S.C. §502(g).

2.14. Claims Bar Date: A date established by court order under which proofs of claim must be filed (except for Claims arising from the rejection of executory contracts or leases and Claims arising from recoveries pursuant to 11 U.S.C. § 550 in order to become allowed Claims and to participate in distributions under the Plan. The Claims Bar Date shall be set in the notice of the Disclosure Statement filed concurrently herewith and will be the first date set for the confirmation hearing

2.15. Class: Each of the categories/classifications of Claims or Equity Interest described in Article 3 of this Plan.

2.16. Confirmation: The entry by the Bankruptcy Court of the Confirmation Order confirming the Plan in accordance with the Bankruptcy Code.

2.17. Confirmation Date: The date the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket.

2.18. Confirmation Hearing: The hearing held by the Bankruptcy Court regarding confirmation of the Plan, including any adjournment or continuation of that hearing from time to time.

2.19. Confirmation Order: An order of the Bankruptcy Court

confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code which is not subject to a pending motion to clarify, vacate, rehear, modify, amend or stay.

2.21. Deficiency Claim: An unsecured Claim against the Debtors or the Estates which amounts to the difference between the value of a secured creditor's collateral, as determined by the Bankruptcy Court or per agreement of the parties, and the amount of the secured creditor's total Claim as timely filed and allowed by he Court.

2.22. Disclosure Statement: The Disclosure Statement filed by the Debtors as required pursuant to § 1125 of the Bankruptcy Code, including but not limited to, any further supplements, restatements, amendments, modifications, or additional disclosures (if any) provided by the Debtors to comply with § 1127 of the Bankruptcy Code or orders of the Bankruptcy Court.

2.23. Disbursing Agent: The Debtor, or a person or entity designated by the Debtor, who shall make Distributions to holders of Allowed Claims under the Plan,

2.24. Distribution: The property required by the Plan and Confirmation Order to be distributed to holders of Allowed Claims,

2.25. Effective Date: The first day of the month following the Confirmation Date.

2.27, Estate: The substantively consolidated bankruptcy estates of the Debtors created under 541 of the Bankruptcy Code.

2.28. Executory Contract: Every unexpired lease and other contract that is subject to being assumed or rejected by the Debtors under § 365 of the Bankruptcy Code pursuant to the Plan or

pursuant to a separate motion,

2.29. <u>Final Order:</u> Any order or judgment of the Bankruptcy Court as to which (a) the time for appeal has expired and no appeal has been timely taken; and (b) any appeal that has been timely taken has been finally determined or dismissed.

2.31. <u>General Unsecured Claim:</u> Any Claim against the Debtors' other than a Secured Claim, an Administrative Claim, a Priority Tax Claim, a Priority Claim, or an equity related Claim.

2.33. <u>Impaired Claim:</u> A Claim that is impaired within the meaning of 11 U.S.C. § 1124. Generally, those Claims in which the legal, equitable, or contractual rights of its holder are altered or affected unless such Claim is reinstated and paid as set forth in 11 U.S.C. § 1124.

2.34. <u>Person:</u> An individual, a corporation, a limited liability company, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof, or any other entity.

2.35. <u>Petition Date:</u> November 17, 2009.

2.36. <u>Plan:</u> The Debtors' Plan of Reorganization, including any amendments or modifications made in accordance with the applicable provisions of the Bankruptcy Code.

2.37. <u>Plan Distribution Date:</u> The first day of the month following the Effective Date and payable on the first day of each month thereafter for sixty (60) months.

2.38. <u>Debtors:</u> Joseph P. Palmisano and Amy K. Palmisano, as

debtors-in possession, also referred to as Debtors.

2.39. Priority Claim: Any Claim entitled to priority treatment pursuant to 11 U.S.C. § 507(a).

2.40. Priority Tax Claim: A Priority Claim entitled to priority treatment under 11 U.S.C. 507 (a) (8).

2.42. Professionals: Any and all professionals that have been retained, with Bankruptcy Court approval, to assist in the conduct of the Bankruptcy Cases or to provide professional services for a specified purpose, all in accordance with § 327 of the Bankruptcy Code.

2.43. Professional Charges: The allowed interim and final professional fees and expenses charged by the Professionals.

2.45. Schedules: The schedules of assets and liabilities, and statement of financial affairs filed by both Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as such schedules and statements may be amended, modified, and supplemented from time to time.

2.46. Secured Claim: An Allowed Claim of a Person who has a lien against property of the Estate which is unavoidable and has been properly perfected according to state or federal law to the extent of the value of the property securing the allowed Claim pursuant to 11 U.S.C. § 506(a).

2.47. Unsecured Claim: Any Claim other than an Administrative Expense Claim, a Priority Claim, a Secured Claim, a Claim that has been subordinated, or an Allowed Interest.

2.48. Interpretation. Rules of Construction, and Other Terms:

(a) Any term used in this Plan that is not defined

above, whether in Article 2 or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules and shall be construed in accordance with the rules of construction for the Bankruptcy Code.

(b) Unless specified otherwise in a particular reference, a reference in this Plan to an article is a reference to that article of this Plan.

(c) Unless otherwise provided, any reference in this Plan to an existing document or instrument means such document or instrument as it may have been amended, modified, or supplemented from time to time.

(d) For the purposes of this Plan and its defined terms, the singular and plural uses of defined terms and the conjunctive and disjunctive uses of defined terms will be fungible and interchangeable (unless the context otherwise requires); and the defined terms will include masculine and feminine.

(e) In addition to the foregoing, the rules of construction set for in § 102 of the Bankruptcy Code shall apply to this Plan.

(f) In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(g) All exhibits to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when filed with the Court.

# ARTICLE 3

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

Holders of all Claims, as defined in 11 U.S.C. § 10 1(4), against the Debtors of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all Claims arising from the rejection of Executory Contracts, shall be bound by the provisions of this Plan and are hereby classified as provided below. As of the Confirmation Hearing, any Class of Claims that does not contain any Creditor's Claims will be deemed deleted automatically from the Plan; and any Class of Claims that does not contain an Allowed Claim (or a Claim temporarily or provisionally allowed by the Bankruptcy Court for voting purposes) will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan. A Claim or Equity Interest is in a particular Class only to the extent the Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest as defined herein.

3.1 Class 1: <u>Administrative Claims.</u> Class 1 Claims shall consist of all administrative expenses entitled to priority under 11 U.S.C. § 507(a)(1). Persons who have incurred administrative expenses pursuant to 11 U.S.C. § 507(a)(1), and whose Claims have been allowed as Administrative Claims shall receive cash on account and in the amount of such Administrative Claim either (a) on the Effective Date; or (b) when due in accordance with the terms of an agreement between the Debtors and such claimant. Professionals employed at the expense of the Debtors shall not

receive any compensation in cash.

3.2 Class 2: <u>Priority Tax Claims</u>. Class 2 Claims shall consist of all Priority Tax Claims. Priority Tax Claims are certain unsecured income, employment and other taxes described by 11 U.S.C. § 507(a)(8). The Code requires that each holder of a Priority Tax Claim, receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of the tax, If Allowed Claims are made and qualify as 11 U.S.C. § 507(a)(8) Priority Tax Claims they will be paid as a Priority Tax Claim thirty six (36) months after confirmation.

3.3. Class 3: <u>Secured Claim of Maricopa County Treasurer re Melody Court.</u>  This property tax claim is treated as a Class 3 Claim. The Pre-petition claim amount is listed in Debtors' Schedules as $2,480.95. The Maricopa County Treasurer's Office Proof of Claim is also for $2,480.95. Debtors shall pay the Pre-Petition Secured Claim in four annual installments of $620.23, with the first payment commencing one year of the Effective Date of the Plan.

3.4. Class 4.  <u>Secured Claim of Tierra Ranchos HOA Re Melody Court.</u>  This Claim is treated as a Class 4 Claim.

The Pre-petition claim amount is listed in Debtors'
Schedules as $528.66. Debtors shall pay the Secured Pre-
Petition Claim within one year of the Effective Date of
the Plan.

3.5. Class 5.    JPMorgan Chase, NA re: Melody Court
This Claim is treated as a Class 5 Secured Claim to the
extent of $597,519.05.  The balance of  Chase's Claim is
treated as an unsecured Non Priority Claim under Class
11. Chase has a first Note and Deed of Trust dated
January 22, 2007, securing Melody Court, and every other
indebtedness of Debtors to Chase.  Chase filed a Proof of
Claim in the amount of $995,067.90.  Debtors shall pay a
Secured Claim of $597,519.05 in monthly installments of
$3,207.61 including interest at the rate of 5% per annum,
commencing on the 1st day of the second month after
Confirmation of Debtors' Plan of Reorganization. Debtors
shall continue to make adequate protection payments until
Plan Confirmation. Adequate Protection Payments shall be
applied as interest on the Secured Claim and shall be
deductible by the Debtors. Chase shall prepare a Modified

Note and Deed of Trust securing the Debtors' Melody Court Residence in the above amount and terms. If not sooner paid, the Modified Note and Deed of Trust shall be paid in full twenty years from the date of Plan Confirmation.

3.6. GMAC Mortgage has a second Note and 2nd DOT securing the Melody Court residence. GMAC shall be treated as a Class 11 unsecured Non-Priority Claim to the full extent of its claim. In Debtors' Schedules, GMAC's claim is listed as $181,722.61. GMAC shall release its 2nd DOT securing the Melody Court residence upon Plan Confirmation.

3.7. JPMorgan Chase has a Note and 3rd DOT securing the Melody Court residence. JPMorgan Chase shall treated as a Class 11 unsecured Non-Priority Claim to the full extent of its claim. In Debtors' Schedules, JPMorgan Chase's claim is listed as $230,310.96. JPMorgan Chase shall release its 3rd DOT securing the Melody Court residence upon Plan Confirmation.

3.8. Class 6. Maricopa County Treasurer re 2530 South Rural Road, Tempe, AZ, This Claim is treated as a Class 6 Secured Claim. The Pre-petition claim amount is listed in Debtors' Schedules as $15,217.81. The Maricopa County Treasurer's Office Proof of Claim is also for $19,408.85. Debtors shall pay the Pre-Petition Secured Claim in four annual installments of $4,852.21, with the first payment commencing within one year after the Effective Date of the Plan.

3.9. Class 7. JPMorgan Chase has a first Note and 1st DOT securing the property located at 2530 South Rural Road, Tempe, AZ. This Claim is treated as a Class 7 Secured Claim of $427, 979.50 less the Maricopa County Treasurer Secured Claim of $19,408.85, or $408,570.65, shall be treated as a Secured Claim. The balance of any claim by Chase shall be treated as an unsecured Non-Priority Claim. Debtors shall pay a Secured Claim of $408,570.50 in monthly installments of $2,508.98 including interest at the rate of 5.5% per annum, commencing on the 1st day of the second month after

Confirmation of Debtors' Plan of Reorganization. Debtors shall continue to make adequate protection payments until Plan Confirmation. Adequate Protection Payments shall be applied as interest on the Secured Claim and shall be deductible by the Debtors. Chase shall prepare a Modified Note and Deed of Trust securing the Debtors' property located at 2530 S. Rural Road property in the above amount and terms. If not sooner paid, the Modified Note and Deed of Trust shall be paid in full ten years from the date of Plan Confirmation.

3.10. Class 8.  <u>Maricopa County Treasurer re 474 West San Remo, Gilbert, Arizona</u>  This Claim is treated as a Class 8 Secured Claim. The Maricopa County Treasurer's Office Proof of Claim is for $5,230.26. Debtors shall pay the Pre-Petition Claim based upon the Proof of Claim in four annual installments of $1,307.56 with first installment payable within one year of the Effective Date.

3.11. Class 9. <u>JPMorgan Chase 1st DOT on the West San Remo,Gilbert, AZ</u> . This Claim shall be treated as a Class

9 Secured Claim to the extent it is less than $150,000, taking into account unpaid property taxes to the Maricopa County Treasurer that are Class 8 Secured Claims. Chase shall have an Allowed Secured Claim of $144,769.74. Any additional amount due shall be treated as a Class 11 unsecured Non-Priority Claim. Chase's Secured Claim on the West San Remo Property shall be payable by a Modified 1st Note and Deed of Trust securing the West San Remo Property. Debtors shall pay the Secured Claim of $144,769.74 in monthly installments of $777.15 including interest at the rate of 5% per annum, commencing on the 1st day of the second month after Confirmation of Debtors' Plan of Reorganization. Debtors shall continue to make adequate protection payments until Plan Confirmation. Adequate Protection Payments shall be applied as interest on the Secured Claim and shall be deductible by the Debtors. If not sooner paid, the Modified Note and Deed of Trust shall be paid in full ten years from the date of Plan Confirmation.

3.12. Class 10. <u>Allowed Unsecured Non-Priority Claims</u>
<u>under $2,000.00.</u>    These claims are treated as Class 10
Administrative Convenience Class Claims, and shall be
paid 50% of such Allowed Claim. Class 10 Administrative
Convenience Class Claims shall be paid within one year of
the Effective Date of the Plan.

3.13. Class 11. <u>Unsecured Non-Priority Claims-</u>
Debtors have listed $450,000 of unsecured Claims.
However, substantial amounts of these claims are listed
as Contingent, Unliquidated and/or Disputed in Debtors'
Schedules, and Debtors anticipate that many of these
claims will not be allowed.  Substantial amounts of
Secured Claims are being crammed down/substantially
reduced as Secured Creditors Claims due to lack of equity
in the properties that secure those claims. To the extent
such creditors are unsecured or undersecured, they are
being treated as Unsecured Non-Priority Creditors.
Allowed Unsecured Non-Priority Claims are treated as
Class 11 Unsecured Non-Priority Claims. Class 11 Claims
shall be paid in four annual installments each of 1.5% of

the Allowed Unsecured Non-Priority Claim. The first

payment shall be paid within one year of the Effective

Date of the Plan, and subsequent payments on the

anniversary date thereof. The total payments shall be 65

of the Allowed Unsecured Non-Priority Claim.

3.14 Class 12. Debtors' Equity Interest. The
Debtors shall retain their equity interest under the Plan
by retaining their ownership interest in the Plan Assets.
Debtors shall make Plan Contributions in consideration
for retention of their interest in Plan Assets.

3.15. Effect of a Secured Creditor's Election under §

1111(b). Section 1111(b) of the Bankruptcy Code covers

the treatment of certain Claims and Interests of

Creditors. Specifically, § 1111(b) provides an option

(the "Election") for the undersecured nonrecourse

creditors being dealt with in the Plan (hereinafter

sometimes the "Undersecured Creditors") to have their

Deficiency Claims treated as secured debt, a deviation

from the bifurcation provisions of 11 U.S.C. §506(a). In

short, the Bankruptcy Code permits these Undersecured

Creditors to choose between two possible treatments with

respect to their Deficiency Claims. First, these
Undersecured Creditors can have their Deficiency Claim
treated as recourse Unsecured Claim, whereby they will
have the right to vote their Claim in Class 11 (Allowed
General unsecured Non-Priority Claims). Alternatively, these
Undersecured Creditors can choose to have the entirety of their
Claim treated as fully secured by their collateral.

11 U.S.C. §1111(b)(1)(A). With respect to the Undersecured
Creditors, despite their nonrecourse status, the Plan provides
they shall have an unsecured Deficiency Claim. However, when a
Creditor makes the Election, such Creditor will, by virtue of the
application of this statute, forego its Deficiency Claim and
instead elect to have its entire Claim treated as if it were fully
secured. In such case, the Debtors shall have the choice of either
returning the collateral or of presenting the indubitable
equivalent of the secured interest pursuant to §1129(b)2)(A)(iii).
If an Undersecured Creditor makes the Election, its Allowed
Secured Claim is not treated the same as a fully Secured Claim.
Rather, the Election gives rise to an "election claim" equal to
its total claim but allotted special treatment for purposes of
plan confirmation. In the event an Undersecured Creditor makes the
Election, its Allowed Secured Claim will be equal to its total
Claim, and in order for the Plan to comply with

§ 1129(b)(2)(A)(i)(I), the lien is not stripped down by § 506(d). Subsection (II) of § 1129(b)(2)(A)(i) guarantees such an electing creditor a stream of payments equal to its total claim. However, the stream of payments need only have a present value "of at least the value of such holder's interest in the estate's interest in such property." To the extent applicable, if an Undersecured Creditor makes the Election, they will be afforded appropriate treatment.

3.16 Executory Contracts:

3.16.1 Assumption of Executory Contracts: Debtors intend to assume their lease agreement with Palmisano & Associates, P.C., for the Debtors property located at 2530 S. Rural Road, Tempe, AZ.

3.16.2 Rejection of Executory Contacts: Unless otherwise specifically set forth herein, all Executory Contracts not previously rejected by prior Court order or by a motion for rejection filed prior to the conclusion of the Confirmation Hearing (as it is continued from time to time) will be rejected by the Debtors pursuant to the Confirmation Order. All executory contracts or unexpired leases rejected by the Debtors shall be treated as General Unsecured Creditors in Class 11, unless specified or allowed otherwise.

3.16.3. Assumption of Other Executory Contracts: Before the Confirmation Hearing, the Debtors may file one or more motions identifying any Executory Contracts that they intend to assume.

Such motions and the Bankruptcy Court's orders thereon will be deemed incorporated in the Plan. All Executory Contracts not otherwise assumed as provided herein will be rejected as of the Confirmation Date.

3.16.4 <u>Rejection Claims Bar Date:</u> Every Claim asserted by a creditor arising from the rejection of an Executory Contract must be filed with the Bankruptcy Court no later than the first business day that is thirty (30) days after the Effective Date. Every such Claim that is timely filed will be treated under the Plan as a General Unsecured Claims, as treated in Class 11. Every such Claim that is not timely filed by the deadline stated above will be forever barred, unenforceable, and discharged, and the Creditor holding the Claim will not receive or be entitled to any distribution under the Plan on account of such Claim.

## ARTICLE 4

### VOTING REQUIREMENTS AND NON-VOTING CLASSES

Creditors will vote to accept or reject this Plan.

4.1 <u>Acceptance by a Class of Creditors:</u> A class of creditors shall have accepted the Plan if the Plan is accepted by two-thirds in amount and more than one-half in number of the Allowed Claims of such class that have voted to accept or reject the Plan.

4.2 <u>Acceptance by a Class of Interests:</u> Class 12 shall have accepted the Plan as an unimpaired Class.

### ARTICLE 5

21

## PROVISION RESPECTING THE IMPAIRED CLASSES OF CLAIMS

5.1 <u>Impaired Classes:</u> Claims in Classes 3 through 11 are Impaired under the Plan and are entitled to cast a ballot to accept or reject the Plan. Ballots will be distributed to holders of Impaired Claims entitled to vote on the Plan pursuant 11 U.S.C. § 1126.

5.2 <u>Cramdown:</u> If any Impaired class of Claims entitled to vote shall not accept this Plan by the requisite statutory majorities provided in Bankruptcy Code 11 U.S.C. § 1126(c), the Debtors reserve the right to request that the Bankruptcy Court confirm this Plan under 11 U.S.C. § 1129(b).

5.3 <u>Treatment of Impaired Classes:</u> The impaired classes shall be treated as described in Article 3.

## ARTICLE 6
### SOURCE OF PAYMENTS

The Debtors shall commit portions of four years of its post-Effective Date net income to pay Secured and Unsecured Claims.

## ARTICLE 7
### GENERAL TERMS AND PROVISIONS

7.1 As of the Confirmation Date, all of the property of the Estate of the Debtors shall be deemed transferred and vested in the Debtor. All such Debtors property shall no longer be

considered property of the Estate as defined in 11 U.S.C. § 541 and all such property shall be free and clear of liens, charges and claims of interest by creditors arising prior to the Effective Date of the Plan, accept for as specifically provided in this Plan.

7.2 Upon Confirmation, all Claims and causes of action of the Debtors against other entities, including rights of Debtors-in-Possession under Chapter 11 of the Bankruptcy Code to recover any preference, transfer assets, or damage, shall vest in the Debtor. The Debtor and their attorneys may file at any time, up to two (2) years after the Plan Distribution Date, any action to recover or set aside any preference, transfer, assets or damages or to set aside any lien or encumbrance to which they may be entitled under the Bankruptcy Code. Pursuant to the Plan, the Debtor reserves the right to initiate such litigation post confirmation, for the benefit of the creditors of the Estate.

7.3 After the Confirmation Date, the Debtor shall manage its affairs without supervision of the Bankruptcy Court and may enter into such agreements, transfer, convey, encumber, use and/or lease its assets as the Debtor deems appropriate under the circumstances without the requirement of seeking approval from the Bankruptcy Court, Nothing in this provision shall impair liens and encumbrances which a holder has retained pursuant to the express terms of this Plan.

7.4 Upon the Effective Date, unless a stay has been entered relating to the Confirmation Order, the order for automatic stay described in 11 U.S.C. § 362(a) shall terminate; provided,

however, except as otherwise expressly specified herein, that all creditors and claimants shall be enjoined from continuing with or commencing with any action or proceeding against the Debtors or guarantors of Debtors without further order of the Bankruptcy Court.

7.5 All Distributions of money under the Plan which are returned by the post office undelivered or which cannot be delivered clue to a lack of current address shall be retained by Debtor in trust for the distributee; after the expiration of six (6) months from the date of the first attempted Distribution, the unclaimed monies and all Distributions will vest in  Debtor, free of any Claim of the distributee.

7.6 Except as expressly specified herein, no creditor or claimant, whether secured, unsecured, priority, or non-priority shall be entitled to any fine, penalty exemplary or punitive damage, late charge, default interest or any other monetary charge ("Penalties") relating to or arising from any default deemed disallowed whether or not an objection is filed thereto. Unsecured creditors shall not be entitled to interest on their Claims, whether or not provided for in any agreements from and after the commencement of the case, unless otherwise expressly provided for in this Plan and shall not be entitled to any cost, expense, or attorneys' fees. Any and all Claims for Penalties are deemed disallowed whether or not an objection to such a Claim for Penalties is made.

7.7 Pursuant to 11 U.S.C. § 1141(a), notwithstanding 11 U.S.C. § 506(d) and except as provided for in 11 U.S.C. § 1

141(d)(2) and (d)(3), upon confirmation of the Plan the provisions of the Plan will bind the Debtor, ally entity issuing securities under the Plan, any entity acquiring property under the Plan, any creditor, whether or not the Claim or interest of such creditor is Impaired under the Plan and whether or not such creditor has accepted the Plan or filed a proof of claim,

7.8 Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order acts as a satisfaction, release and discharge, effective as of the Confirmation Date, of any and all debts of the Debtors that arose at any time before the entry of the Confirmation Order, including but not limited to, all principal and any and all interest accrued thereon, pursuant to 11 U.S.C. § 1141(d)(1). The discharge of the Debtors shall be effective as to each Claim regardless of whether a Proof of Claim thereof was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to• accept the Plan. In addition, any prepetition obligations of the Debtors dealt with in the Plan shall be considered "new obligations" of the Debtors. "New obligations" shall not be considered in default unless and until the Debtors' default on the "new obligations" pursuant to the terms of the Plan.

7.9 All Claims of a lien in any of Debtors' personal property shall be deemed released, terminated, and withdrawn, unless the creditor claiming a lien has filed a timely, formal and proper proof of claim with the Bankruptcy Court setting forth the basis and extent of the lien.

7.10 Upon payment of sums provided under the Plan, all Claims

of any creditor of Debtors arising prior to the confirmation of the Plan against the Debtors shall be wholly released and discharged, and any actions or proceedings against the Debtors, including any judgment and judgment liens, shall be terminated, relinquished and released.

7.11 The Debtors' obligations to make any payment under this Plan may be discharged to the extent that such payment is made by any entity that is liable with the Debtors or has secured the Claim or the right to payment giving rise to the Debtors' obligation.

7.12 Classes of Claims and Equity Interests and Payment: There are various classes of claims and interests defined in this Plan. This Plan shall resolve all Claims against the Debtors and Equity Interests of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court under § 5 02(h) of the Code, only those claims or interests allowed under § 502(a) of the Code will receive a payment or distribution under this Plan. If a creditor holds more than one claim in one class, all of the claims of the creditor will be aggregated and the creditor will be entitled to one vote in the amount of all aggregated claims.

7.13 Claim Dispute Resolution: On the 30th day after the Effective Date, all persons claiming a Class 1 Administrative Claim (including for professionals employed pursuant to § 327 of the Bankruptcy Code) shall file an application seeking allowance of their claims with the Bankruptcy Court and serve a copy upon the Debtors' counsel, Any holder of a Class 1 Administrative Claim

who fails to timely file the appropriate motion for payment of Administrative Claim shall be deemed to have waived its claim, and the claim will be disallowed. On or before the sixtieth (60th) calendar day after the Effective Date, the Debtors shall file their objections to any proof of claim or interest filed, or deemed filed herein. Any objection not timely filed shall be deemed waived and abandoned, and all proofs of claim or interests filed, or deemed filed, to which an objection is not filed shall be deemed allowed. The Court shall resolve all objections at a separate hearing. Any claims or interests not timely filed or allowed shall be discharged by the Confirmation Order,

7.14. <u>Notices:</u> Any notice required or permitted to be provided under the Plan will be in writing and served by regular postage prepaid first-class mail, hand-delivery, facsimile, or e-mail.

7.15. <u>Closing of the Case:</u> At such time as the Plan has been fully administered (substantially consummated), the Debtors will file an application for Final Order showing that the Plan has been fully administered.

7.16. <u>Exculpation and Limitation of Liability:</u> Neither the Debtors, nor any of their respective present or former advisors, attorneys, or agents will have or incur any liability to any holder of a Claim or Equity Interest or any other party-in-interest or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns for any act or omission in connection with, relating to, or arising out of the Bankruptcy

Cases, the extension of credit to the Debtors during the
Bankruptcy Cases pursuant to debtor-in-possession financing or the
use of cash collateral, efforts to obtain confirmation of the
Plan, the consummation of the Plan, or the administration of the
Plan or the property to be distributed under the Plan, whether now
known or hereafter discovered, except for their willful
misconduct, and in all respects such parties will be entitled to
rely reasonably upon the advice of counsel with respect to their
duties and responsibilities under the Plan or in the context of
the Bankruptcy Cases, Notwithstanding any other provisions in the
Plan, no holder of a Claim, other party-in-interest, or none of
their respective agents, employees, representatives, financial
advisors, attorneys, or affiliates, and no successors or assigns
of the foregoing, will have any right of action against the
Debtors, the Debtors, or any of their respective present or former
officers, directors, partners, employees, advisors, attorneys, or
agents for any act or omission in connection with, relating to, or
arising out of the Bankruptcy Cases, the pursuit of confirmation
of the Plan, the consummation of the Plan, or the administration
of the Plan or the property to be distributed under the Plan,
whether now known or hereafter discovered, except for their
willful misconduct.

7.17. General Injunction: Except as otherwise expressly
provided in this Plan, the Confirmation Order shall provide,
amount other things, that all parties-in-interest who have held,
hold, or may hold Claims are permanently enjoined on and after the
Effective Date from:

(a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Debtors or any successor-in-interest of the Debtors;

(b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree or order against the Debtors or any successor-in-interest of the Debtors, property of the Debtors, or against property of any successor-in-interest of the Debtors with respect to any such Claim;

(c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or any successor-in-interest of the Debtors, against property of the Debtors, or against property to any successor-in-interest of the Debtors with respect to any such Claim;

(d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtors or any successor-in-interest of the Debtors, against property of the Debtors, or against property of any successor-in-interest of the Debtors, with respect to any such Claim;

(e) conducting any form of discovery from the Debtors with respect to any such Claim, or any successor-in-interest of the Debtors; and/or

(f) harassing the Debtors or any successor-in-interest of the Debtors,

7.18. Interest: Whenever interest is to be computed under the Plan, interest will be simple interest and not compounded. Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be

paid on Claims, and no holder of a Claim will be entitled to interest accruing on or after the applicable Petition Date on any Claim.

7.19. Additional Assurance: The Debtors and any prty-in-interest holding Claims herein will execute such other further documents necessary to implement any of the provisions of the Plan.

7.20. Successors and Assigns: The rights and obligations of any Creditor or other party-in-interest referred to in the Plan will be binding upon, and will inure to the benefit of, the successors, assigns, heirs, devisees, executors, and personal representatives of such Creditor or party-in-interest.

7.21. Withdrawal of the Plan: The Plan may be withdrawn or revoked by the Debtors at any time before entry of the Confirmation Order.

7.22. Severability and Reformation: It is the intention of the Debtors to comply fully with the Bankruptcy Code and applicable non-bankruptcy law in proposing the Plan. Therefore, if any provision the Plan is determined by the Bankruptcy Court to be contrary to the Bankruptcy Code or applicable non-bankruptcy law, that provision will be deemed severed and automatically deleted from the Plan, if it cannot be reformed or the provision or interpretation of the provision will be deemed reformed to ensure compliance; provided, however, that nothing contained in this paragraph will prevent the Debtors from modifying the Plan in any manner whatsoever in accordance with and as set forth in the Plan. Pursuant to any ruling by the Bankruptcy Court regarding the

subject matter of this paragraph, any such severance or reformation will be stated specifically in the Confirmation Order, which then will control notwithstanding any contrary or inconsistent provisions of the Plan.

7.23. <u>Prohibition Against Prepayment Penalties:</u> If the Debtors so chose, in their sole and absolute discretion, to prepay any obligation on which deferred payments are provided for under the Plan, the Debtors will not be liable or subject to the assessment of any prepayment penalty thereon unless otherwise ordered by the Bankruptcy Court. 7.24 Payment of Statutory Fees and Filing of Quarterly Reports: All fees payable pursuant to 28 U.S.C. § 1980, as determined by the Bankruptcy Court at or in conjunction with the Confirmation Hearing, will be paid on or before the Effective Date and, thereafter, in accordance with applicable bankruptcy [aw. All quarterly reports of disbursements required to be filed by applicable bankruptcy law will be filed in accordance with applicable bankruptcy law.

7.25. <u>Governing Law:</u> Except to the extent the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by construed, and enforced in accordance with, and subject to, the laws of the State of Arizona, excluding any laws that result in the application of the laws of another jurisdiction.

7.26. <u>Conflicts Between the Plan and Confirmation Order:</u> In the event the terms of this Plan and the Confirmation Order conflict, the terms of the Confirmation Order shall govern. 06'

7.27. <u>Binding Effect of Plan:</u> The provisions of this Plan

shall bind the Debtors and any Person holding a Claim against the
Debtors and the Estate, whether asserted or non-asserted, and any
Person asserting an Equity Interest in the Debtor or its
Subsidiaries or Affiliates, and their respective successors and
assigns, whether or not a Claim or Equity Interest of such Person
arose before or after the Petition Date or the Closing Date,
whether or not the Claim or Equity Interest is impaired under the
Plan and whether or not such Person has accepted the Plan.

## ARTICLE 8

**DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; and AVOIDING ACTIONS.**

8.1. Time for Filing Claims: All proofs of claim and the
assertion of any Claim in this Bankruptcy Case must have been
filed by the Claims Bar Date or such Claim shall be forever
barred.

8.2. Time for Filing Objections: The Debtors may file an
objection to any Claim ("Claim Objection") prior to Plan
Confirmation. After the Effective Date, the Reorganized Debtor may
object to any Claim that has not been allowed by a final order of
the Court, including any Claim that was not scheduled or was
scheduled as disputed, contingent, or unliquidated.

8.3. Responsibility for Objecting to Claims: Only the Debtors
and no other party may file a Claim Objection after the Effective
Date of the Plan. The failure of the  Debtors, prior to
Confirmation, to object to a Claim shall in no way be deemed a
waiver of the right to object to such Claim in whole or in part.

The Debtors reserve the right to contest and object to any Claim asserted against them.

8.4. Payment of Contested Claims: There shall be no Distribution to the holder of a Claim that has been disputed ("Contested Claim") until the objection to the Contested Claim has been resolved by a final order of the Bankruptcy Court and the Contested Claim has become an Allowed Claim. Payments and Distributions on account of each Contested Claim that subsequently becomes an Allowed Claim shall be made in accordance with the provisions of the Plan relating to the class of creditors to which the holder of the Allowed Claim belongs. Until a final order is entered allowing or disallowing a Contested Claim, funds shall be reserved based upon the pro rata share of Distributions that would be payable if the full amount of the Contested Claim were allowed, and withheld from Distribution to other creditors.

8.5. Objecting to Claims: Any objection to a Claim ("Claim Objection") shall be filed with the Bankruptcy Court and served upon the holder of each of the Claims to which a Claim Objection is made as set forth in the Bankruptcy Code and the Bankruptcy Rules. Notwithstanding anything set forth herein to the contrary, no Distribution shall be made on account of any Claim until such Claim is an Allowed Claim. A claimant whose Claim is the subject of a Claim Objection must file with the Bankruptcy Court and serve upon the Debtors response to the Claim Objection specifically addressing the allegations or issues raised in the Claim Objection. Failure to file or to serve a response to the Claim Objection within the applicable period required by the Bankruptcy

Code, the Bankruptcy Rules or any Order of the Bankruptcy Court shall allow the Bankruptcy Court to enter a default judgment against the non-responding claimant granting the relief sought in the Claim Objection. After the Effective Date, the Reorganized Debtor shall be authorized to settle and compromise any and all Contested Claims without Bankruptcy Court approval.

## ARTICLE 9

### CLOSING OF CASE AND FINAL ORDER

When the Plan has been fully administered, the Debtors shall file an Application for Entry of Final Decree and Order Closing Case (the "Application"). This case will be deemed fully administered when

(a) the order confirming the reorganization Plan has become final;

(b) all transfers contemplated by the Plan have been effected;

(c) all outstanding adversary proceedings and contested matters have been resolved;

(d) the Debtors have begun to manage their affairs; and

(e) payments to creditors have commenced. Upon entry of the Bankruptcy Court's Order approving the application of all Claims and causes of action arising out of and relating to the Debtors shall be deemed satisfied and forever barred. The Debtors shall be discharged from any further liability or obligation to the creditors, the Bankruptcy Court and Estate, except as

specifically set forth in the Plan.

## ARTICLE 10

### RETENTION OF JURISDICTION

Notwithstanding the confirmation of this Plan and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction for all matters arising out of, or related to, the Bankruptcy Case and this Plan, including, but not limited to, all of the following:

A. To determine, facilitate, or implement the allowance, disallowance, treatment, satisfaction, or payment of any Claim, or Equity Interest, in any portion thereof, pursuant to the Plan upon any objections thereto (or other appropriate proceedings) by the Debtors or by any other party-in-interest entitled to proceed in that manner;

B. To determine the allowance of Administrative Claims and expenses as well as any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

C. To determine any disputes regarding the fees, costs, and expenses of the Chapter 11 Professionals or any professionals or other Persons employed by the Debtors;

D. To resolve counterclaims against persons filing Claims;

E. To determine any dispute that may arise regarding the interpretation of any provisions of the Plan or that may arise from any and all documents or agreements relating to the Plan.

F. To facilitate the performance, implementation, and/or consummation of the Plan by entering, consistent with the provisions of the Plan, any further necessary or appropriate

orders regarding enforcement of the Plan and any provision thereof.

G. To determine any and all claims arising from rejection of unexpired leases and other executory contracts;

H. To authorize and approve any sales of the Debtors' Assets free and clear of all liens, claims, interests, or encumbrances and to authorize and approve any refinance transactions in accordance with the terms of the Plan, to the extent that Bankruptcy Court approval of the proposed sale or refinance transaction is required under the terms of the Plan;

I. To resolve of any and all applications, adversary proceedings, and contested or litigated matters pending before the Court as of the Effective Date;

J. To resolve any complaints for recovery of assets or avoidance of transfers pursuant to the relevant provisions of the Bankruptcy Code;

K. To modify the Plan as may be necessary pursuant to the Bankruptcy Code;

L. To enter any order, including injunctions, necessary to enforce or protect the title, rights, and powers of the Debtors or the Estate under the Plan;

M. To grant discharge to the Debtors pursuant to 11 U.SC. § 1141(d)(5)(B) if applicable;

N. To adjudicate any dispute or to hear and determine any action taken, proposed, or threatened by any state, federal, or local governmental agency or unit having or asserting jurisdiction or power over the conduct of the business of the Debtors,

including but not limited to, any governmental unit's claim with
respect to any tax, or any fine, interest or penalty relating to a
tax.

O. In the event of an appeal of the Confirmation Order or any
other kind of review or challenge to the Confirmation Order, and
provided that no stay of the effectiveness of the Confirmation
Order has been entered, implement and enforce the Confirmation
Order and the Plan according to their terms, including, but not
limited to, jurisdiction to enter such orders regarding the Plan
or the performance thereof as may be necessary to consummate the
Plan; and

P. To enter a final decree closing the case.


**ARTICLE 11**

**MODIFICATION OF THE PLAN**


11.1. Modification of Plan: The Plan may be modified by the
Debtors from time to time in accordance with, and pursuant to
§ 1127 of the Bankruptcy Code. The Debtors may modify the Plan at
any time before confirmation, provided that the Plan, as modified,
meets the requirements of § 1122 and 1123 of the Bankruptcy Code.
In addition, the Debtors may also elect to withdraw the Plan from
further Court consideration. The Court may require a new
Disclosure Statement and/or re-voting on the Plan if the Debtors
modify the plan before confirmation. The Debtors may also seek to
modify the Plan at any time after confirmation so long as (1) the
Plan has not been substantially consummated and (2) the Court

authorizes the proposed modifications after notice and a hearing.

A. Effect of Modification of the Plan: Every modification of the Plan will supersede the previous version of the Plan as and whenever each modification is effective. When superseded, the previous version of the Plan will be null, void, and unusable by the Debtors or any other party for any purposes whatsoever with respect to any of the contents of such version of the Plan.

## ARTICLE 12

### CONFIRMATION OF THE PLAN

12.1. <u>Confirmation Despite Rejection (Cramdown)</u>: Pursuant to 11 U.S.C. § 1129(b), the Debtors request that the Court confirm the Plan as to any class of Claims that does not accept the Plan by finding that:

(a) The Plan does not discriminate unfairly;

(b) The Plan is fair and equitable with respect to each class of Claims or interests that is Impaired and has not accepted it; and;

(c) each holder of a Claim receives or retains on account of its Claim, property of a value that is not less than it would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code and that the Plan satisfies the "best interest of creditors" test set forth in 11 U.S.C. § 1129(a)(7). The Debtors believe, with respect to the Plan, all three requirements are met. If a class of Secured Claims does not accept the Plan, the Bankruptcy Code provides that the fair and equitable standard is

satisfied, if each claimant retains its lien and receives deferred cash payments of a present value equal to the value of its secured interest as defined in 11 U.S.C. § 506(a). The Debtors believe that this requirement is met as to Secured Claims; because the Plan provides for all secured creditors to retain their liens and the Debtors do not believe there are any secured creditors who will not receive the full value of their Allowed Secured Claims. If a class of Unsecured Claims does not accept the Plan, the fair and equitable standard requires that holders of junior interests receive nothing, unless unsecured creditors receive deferred cash payments of a present value equal to the amount of their Claims. The Plan complies with this requirement of the Bankruptcy Code. The Debtors request that the Bankruptcy Court find that even if a class of Secured Claims does not accept the Plan, the Plan satisfies the fair and equitable standard of the Bankruptcy Code because each claimant retains its lien and receives deferred cash payments of a present value equal to the value of its secured interest so that the objections, if any, of any class of Secured Claims should be overruled. The Debtors further request that the Bankruptcy Court find that even if a class of Unsecured Claims does not accept the Plan, the Plan satisfies the fair and equitable standard of the Bankruptcy Code because the holder of any claim that is junior to the claims of unsecured creditors will receive no property except to the extent that the Debtors may retain property included in the Estate under 11 U.S.C. § 1115, so the objections, if any, of any class of Unsecured Claims, should be overruled.

RESPECTFULLY SUBMITTED this _____ day of _____,
2010.

**JAMES E. BROWN, P.C.**


By_____
    James E. Brown
    2111 East Highland Avenue
    Suite 145
    Phoenix, AZ 85016-4732
    Attorney for Debtors

ORIGINAL of the foregoing
**electronically** filed this
_____ day of_____, 2010
with the U.S. Bankruptcy Court.

Approved:


Joseph P. Palmisano


Amy K. Palmisano

RESPECTFULLY SUBMITTED this 14th day of September, 2010.

**JAMES E. BROWN, P.C.**

By  /s/ James E. Brown
James E. Brown
2111 East Highland Avenue
Suite 145
Phoenix, AZ 85016-4732
Attorney for Debtors

ORIGINAL of the foregoing
**electronically** filed this
14th day of September, 2010
with the U.S. Bankruptcy Court.

Approved:


Joseph P. Palmisano


Amy K. Palmisano